43 So.2d 113

**BENSON v. PICKENS COUNTY et al.**

6 Div. 845.

Supreme Court of Alabama.

Oct. 20, 1949.

As Modified on Denial of Rehearing
Dec. 1, 1949.

John A. Altman, Carrollton, for appellant.

Patton & Robinson and Curry & Curry, Carrollton, for appellees.

BROWN, Justice.

This is a bill by a property owner in possession whose title is not in dispute against the County of Pickens, B. G. Robison, Judge of Probate and Chairman of the Court of County Commissioners, Lewis C. Davis, O. U. Cook, W. W. Curry and George N. Downer, as County Commissioners and as individuals, seeking a declaratory decree as to their liability for damages as alleged resulting from the acts of defendants' agents, servants and employees from entering upon complainant's lands on November 10, 1947, and cutting out a right of way for a public road, cutting and removing pasture fences, destroying accessibility to water springs for her cattle, felling and "skinning" or barking trees and making ditches through the complainant's lands for drainage of from fifteen to thirty feet in width and 820 yards in length.

The bill alleges that defendants assert as a basis for their right to cut out said right of way and do the other things complained of that said public road was established across said lands by an order of the Com-

136

missioner's Court of Pickens County entered on the minutes of said court on the 3rd day of April, 1912. Said order is made an exhibit to the bill and is in the following words:

Posey and jogn (John) Hamner thence on the land line between J. S. Hall and J. W. Hamner about one fourth of a mile, thence Southeast across a little corner of the lands of J. S. Hall and Bud Hall to Lower Car-

"Order Establishing Road in        The State of Ala.        Commissioner Court
Raleigh Beat                       Pickens County           April 3, 1912.

"In the matter of the report of C. L. Strickland, J. B. Moore and other viewers heretofore appointed to view and mark out a change in road in Raleigh Beat:

"This cause coming on to be heard came Bud Hall and Joe Hall and object to the report of viewers heretofore filed in said cause and to the proposed location of said road through their land and all the parties being in Court and represented by attorneys, it appears to the Court that the said route proposed to be established as shown by the report of said viewers in (is) impractical and would be to the great damage of said Halls, and it further being made to appear to the Court that the road hereinafter set out would serve the interest of all the parties and would work no injury to the said Halls, and all of the said parties being present in Court and agreeing to the location of said road as hereinafter shown, and the said Josiah Hall and Bud Hall in open court releases all claim for damages they may have by reason of the road passing over and through their land, and it appearing to the Court that all the parties owning land through which the said road will pass have released their claims for damages or have been satisfied.

"It is ordered and adjudged by the Court that the report of the viewers heretofore filed in the Court be and the same is hereby ratified and confirmed with the exception that the road established by the Court and ordered opened at once shall be as follows: Commencing at the point of intersection of the Gordo and Raleigh public road with the upper Tuscaloosa and Carrollton public road and travelling the said Tuscaloosa and Carrollton public road East to the line between Josiah Hall and R. A. Posey thence south on the east side of said line between Josiah Hall and R. A. Posey to land corner between the lands of Josiah Hall, R. A.

rollton and Tuscaloosa public road, thence on across said road in same direction across Northeast corner of J. W. Kirk's land into settlement road at or near new land line between J. W. Hamner and J. W. Kirk and on by the houses of J. W. Kirk, R. F. Loyd, B. L. Loyd, J. B. Fair and on through J. R. Brandon's land to lower Carrollton & Raleigh road travelling said road past the house of J. R. Brandon and thence down settlement through lands of J. C. McDuff, R. B. Kirk, John Ballard, Bob Burks and through Pioneer Lumber Company's land and on by Bill Duren and West Duren and intersecting the Raleigh road at or near the Clanton place.

"And it further appears to the Court that 30 days' notice of said application for said road has been goven (given) by posting one notice at Court house door and at three other public places, two of which were in the immediate neighborhood of said contemplated road.

It is further ordered that Charlie Strickland be and he is hereby appointed as overseer to cut out said road from intersection of Gordo and Raleigh road and Tuscaloosa and Carrollton road in Gordo beat to Raleigh Beat line and J. W. Kirk be and he is hereby appointed overseer to cut out said road in Raleigh Beat from Raleigh Beat line to Raleigh road near Clanton Place. * * *"

The bill alleges in short that defendants cannot be heard to say the right of way of said road was acquired by said abortive order; or that the abortive order was "valid", as there was no specific description of the property sought to be taken or of any property set out in said purported order; that said "abortive" order is "valid" because it did not state the character of title sought to be acquired; that said order was "valid" and Pickens County acquired "any

property" in that the order did not state the name of all the parties whose lands were taken; or "that said abortive order" is "valid" to acquire the road complained about as the order shows on its face that it purports to establish a road in "Raleigh beat when as a matter of fact a large part of the road complained about on complainant's lands is in Gordo beat." The bill makes numerous other like allegations as to the validity of said order.

It is further alleged that said damnifying acts were committed without the complainant's consent and against her protest and without compensation being first made. That she presented to the respondents sitting as the Commissioner's Court of said County an itemized verified statement of her damages showing the time and place and amount thereof, and said court made an order disallowing her said claim.

The bill prays for a declaratory judgment or decree to the effect that said order of the commissioner's court of April 3rd, 1912, is an "abortive illegal order and did not cause the respondent Pickens County, Alabama, to acquire any right to construct the road across complainant's said lands," or to maintain the same and "to adjudicate and determine the amount of compensation due the complainant by reason of the unlawful acts" and for general relief.

The defendants jointly and severally demurred to the bill as last amended for want of equity; that complainant had a complete and adequate remedy at law; that the bill was multifarious; that the allegations of the bill are argumentative; that the allegations of the bill are equivocal; that the bill stated the conclusions of the pleader; misjoinder of parties and numerous other grounds.

The circuit court entered a decree sustaining the demurrers to the bill generally and from that decree the complainant has appealed.

■■ The allegations of the bill on demurrer are construed most strongly against the pleader, resolving doubtful intendments against the sufficiency of the pleading. The repeated allegations of the bill touching the alleged "abortive" order of the commission-

er's court of April 3, 1912, rendered the allegations of the bill prolix in violation of Equity Rule 11, Code of 1940, Tit. 7 Appendix, p. 1050; Minor v. Thomasson, 236 Ala. 247, 182 So. 16; Browder v. Board of Commissioners, 228 Ala. 687, 155 So. 366. This defect in the bill was pointed out by grounds 3, 4 and 5 of the "additional" demurrer assigned by the defendants separately and severally.

■■ The existence and validity of the alleged order of the court of county commissioners of said county is defensive matter, and the allegations in respect thereto have the effect of setting up the proverbial "man of straw" as a target to be easily destroyed. This offends the rules of good pleading. Authorities are not wanting going to sustain the proposition that an unused and unexecuted order standing on the minutes of the commissioner's court for more than twenty years is inefficacious to justify a trespass against one in the peaceable possession of lands against objection and protest of the occupant and cannot be made the basis of disputing complainant's title. Claims of property rights which have been permitted to slumber without assertion or recognition for twenty years are presumed to have no legal existence. Jellerson v. Pettus et al., 132 Ala. 671, 674, 32 So. 663; Black v. Pratt Coal & Coke Co., 85 Ala. 504, 511, 5 So. 89; Moran v. Horsky, 178 U.S. 205, 20 S.Ct. 856, 44 L.Ed. 1038. "This court has repeatedly held that the lapse of 20 years without recognition of adversary right, or admission of liability, operates an absolute rule of repose." Kidd v. Borum, 181 Ala. 144, 161, 61 So. 100, 106, Ann.Cas.1915C, 1226.

■ Whether or not the individual defendants are liable for the alleged damages committed by their alleged agents and servants depends on the lawfulness of the acts of said servants or agents,—that they were authorized to do so by a valid and lawful order of the court of county commissioners. Finnell v. Pitts, 222 Ala. 290, 132 So. 2.

■ There is no pretense that said right of way was condemned by the county under its power of eminent domain. Code of 1940, Tit. 12, §§ 198, 199. If the county

through its duly constituted authorities without the consent of the landowner whose title and possession is not disputed takes or undertakes to appropriate private property for public use, a court of equity will intervene and require just compensation to be made. East & W. R. Co. of Alabama et al. v. East Tennessee, V. & G. R. Co., 75 Ala. 275.

We quote from the opinion of the court: "* * * 'Municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for the property taken, injured or destroyed, by the construction or enlargement of its works, highways or improvements, which compensation shall be paid before such taking, injury or destruction.' It is most essential to the preservation of the rights of private property, to the protection of the citizens, and to the preservation of the best interests of the community, that all who are invested with the right of eminent domain, with the extraordinary power of depriving persons, natural or artificial, without their consent, of their property, and its possession and enjoyment, should be kept in the strict line of the authority with which they are clothed, and compelled to implicit obedience to the mandate of the Constitution. A court of equity will intervene to keep them within the line of authority, and to compel obedience to the Consituation, because of the necessity that they should be kept within control, and in subjection to the law, rather than upon the theory that they are trespassers, or that the injury which they are inflicting is irreparable. * * *" East & W. R. Co. of Alabama v. East Tennessee V. & G. R. Co., 75 Ala. 275, 281.

In the light of this principle we are not of opinion that the general demurrer "for want of equity" should have been sustained. The bill is not multifarious, nor is the fact that complainant could sue at law for damages an answer to the situation. The allegations of the bill as against the general demurrer present a justiciable controversy. White v. Manassa, 252 Ala. 396, 41 So.2d 395. The circuit court ruled correctly in sustaining the demurrers to the bill for reasons above stated. The complainant is allowed thirty days to amend her bill.

Affirmed.

FOSTER, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur